IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-CV-550-D

| | | |
|---|---|---|
| CDI CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| HCL AMERICA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

On October 2, 2017, CDI Corporation ("CDI" or "plaintiff") filed a complaint in Wake County Superior Court against HCL America, Inc. ("HCL" or "defendant"), alleging claims for breach of contract, tortious interference with contract, and violations of the Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1, et seq. [D.E. 1-4]. On October 30, 2017, HCL removed the action to this court pursuant to 28 U.S.C. § 1441 [D.E. 1]. On November 17, 2017, CDI filed an amended complaint [D.E. 14]. On December 1, 2017, HCL answered and counterclaimed for breach of contract [D.E. 24]. On December 21, 2017, CDI answered the counterclaim [D.E. 27]. On June 28, 2018, HCL moved for partial judgment on the pleadings concerning CDI's tortious interference with contract and UDTPA claims [D.E. 40] and filed a memorandum in support [D.E. 41]. On July 30, 2018, CDI responded in opposition [D.E. 43]. On August 13, 2018, HCL replied [D.E. 44]. As explained below, the court grants HCL's motion for partial judgment on the pleadings.

I.

CDI provides recruitment and staffing solutions for companies in multiple industries, including industrial equipment, aerospace, chemicals, and energy. See Am. Compl. [D.E. 14] ¶¶ 1,

11.[1] HCL provides information technology services to companies. See id. ¶ 1. On December 1, 2014, CDI and HCL entered a three-year contract under which CDI would provide temporary staffing and recruitment services to HCL. See id. ¶¶ 1, 16; Simons Aff. Ex. A [D.E. 17-1]. "Pursuant to the [a]greement, CDI would identify and provide to HCL certain temporary solutions for staffing projects with personnel who were experienced and skilled in certain computer functions." Am. Compl. [D.E. 14] ¶ 17.

On November 4, 2015, the parties amended the contract. See id. ¶¶ 1, 18, 21. The amendment provided that CDI would pay HCL $1.75 million to be a "lead vendor" of HCL, which "facilitate[d] HCL's efforts to consolidate resources onto CDI's payroll" to improve efficiency and decrease costs. Id. ¶¶ 18, 21; Simons Aff. [D.E. 16-1] ¶¶ 9, 12. Because CDI was a lead vendor, the contract required HCL to terminate its contracts with "Other Suppliers." See Am. Compl. [D.E. 14] ¶ 22. HCL also agreed not to engage in the practice known in the industry as "delayering." See id. ¶ 23. In other words, HCL agreed that it would not contract directly with CDI subcontractors or independent contractors performing work for HCL before December 1, 2017. See id. ¶¶ 2, 23; Simons Aff.[D.E. 16-1] ¶¶ 14, 20.

To perform under the contract, CDI contracted with numerous third-party subcontractors and independent contractors to provide temporary staffing solutions to HCL. See Am. Compl. [D.E. 14] ¶ 26. These subcontracts contained post-termination restrictive covenants prohibiting the subcontractors, independent contractors, and suppliers from working directly or indirectly with HCL "other than through CDI." Id. ¶ 27. Thus, while the contract between HCL and CDI prohibited HCL from directly or indirectly contracting with CDI's subcontractors and independent contractors before

---

[1] CDI's amended complaint contains two sets of paragraphs listed as paragraphs 10–11. See Am. Compl. [D.E. 14] ¶¶ 10–11. The above reference is to the paragraph 11 listed second. This order will otherwise retain the paragraph numbering of CDI's amended complaint.

December 1, 2017, the subcontracts contained restrictive covenants prohibiting HCL from doing so after that date. See id. ¶ 28.

In March 2016, CDI learned that HCL hired a CDI subcontractor in violation of the contract. See id. ¶ 30; Simons Aff. [D.E. 16-1] ¶ 21. CDI raised this issue with HCL, and HCL assured CDI that HCL would not engage in any further delayering. See Am. Compl. [D.E. 14] ¶ 30. HCL, however, continued to do so. See id. ¶¶ 30–31, 36. Moreover, HCL demanded that CDI pay extra-contractual rebates "to receive the benefit of [CDI's] bargain." Id. ¶ 31. CDI alleges that HCL's conduct, including the demands for extra-contractual rebates and delayering of CDI's subcontractors, negatively affected CDI. See Dent Aff. [D.E. 15-1] ¶¶ 7–8; Simons Aff. [D.E. 16-1] ¶¶ 29–31.

On March 14, 2017, and May 23, 2017, CDI notified HCL that CDI's financial performance triggered a contractual condition requiring HCL to repay the $1.75 million that CDI paid for lead vendor status to CDI. See Am. Compl. [D.E. 14] ¶ 32; [D.E. 17-2]; [D.E. 16-5]. HCL's management allegedly acknowledged that HCL owes the $1.75 million to CDI, but HCL failed to repay CDI. See Am. Compl. [D.E. 14] ¶ 33. CDI also complied with an audit that HCL demanded concerning CDI's financial circumstances, which CDI alleges "confirmed CDI's entitlement to the $1.75 million payment." Id. ¶ 34. CDI further alleges that HCL's true intent in demanding the audit was to force renegotiation of the contract's anti-delayering terms. See id. ¶ 35. In July 2017, the parties met, and HCL conditioned resolving the repayment issue on an amendment to the contract that would permit HCL to contract with some of CDI's subcontractors directly. See id. CDI also claims that HCL's complaint that CDI deployed resources at a rate exceeding the "rate card" was also pretextual. See id. ¶¶ 37–38. Finally, CDI alleges that HCL failed to terminate its relationships with a majority of CDI's subcontractors and suppliers identified by CDI as required by the contract. See id. ¶ 39.

3

II.

A party may move for judgment on the pleadings at any time "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). A court should grant the motion if "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." Park Univ. Enters. v. Am. Cas. Co. of Reading, 442 F.3d 1239, 1244 (10th Cir. 2006) (quotation omitted), abrogated on other grounds by Magnus, Inc. v. Diamond State Ins. Co., 545 F. App'x 750 (10th Cir. 2013) (unpublished); see Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 375 (4th Cir. 2012); Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405–06 (4th Cir. 2002). A court may consider the pleadings and any materials referenced in or attached to the pleadings, which are incorporated by reference. See Fed. R. Civ. P. 10(c); Fayetteville Inv'rs v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). A court also may consider "matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

The same standard applies under Rule 12(c) and Rule 12(b)(6). See Burbach Broad. Co., 278 F.3d at 405–06. Thus, a court construes the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 347, 352–53 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015); Burbach Broad. Co., 278 F.3d at 406. Nevertheless, when analyzing a motion for judgment on the pleadings, a court must determine whether a pleading is legally and factually sufficient. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80, 684 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–70 (2007); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). Therefore, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678

(quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. Moreover, a court need not accept a pleading's legal conclusions drawn from the facts. See Iqbal, 556 U.S. at 678–79; Giarratano, 521 F.3d at 302. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted).

Because subject-matter jurisdiction is based on diversity, the court applies state substantive law and federal procedural rules. See Erie R.R. v. Tompkins, 304 U.S. 64, 78–80 (1938); Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002). The parties agree that North Carolina law applies to all claims. Accordingly, this court must predict how the Supreme Court of North Carolina would rule on any disputed state-law issue. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See id. at 369; Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999). If there are no governing opinions from that court, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation omitted). In applying state law, a federal court should not create or expand a state's public policy. See Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314–15 (4th Cir. 2007); Wade, 182 F.3d at 286; St. Paul Fire & Marine Ins. Co. v. Jacobson, 48 F.3d 778, 783 (4th Cir. 1995).

A.

CDI alleges that HCL is liable for tortious interference with contract. See Am. Compl. [D.E. 14] ¶¶ 49–59. Under North Carolina law, a plaintiff must prove five elements to state a claim for tortious interference with contract: (1) a valid contract between the plaintiff and a third-party that gives the plaintiff a contractual right against the third-party, (2) the defendant knows of the contract, (3) the defendant intentionally induces the third-party "not to perform the contract," (4) the defendant

5

acts without justification, and (5) the defendant's conduct causes actual damages to the plaintiff. Krawiec v. Manly, 370 N.C. 602, 606–07, 811 S.E.2d 542, 546 (2018); Embree Const. Grp. v. Rafcor, Inc., 330 N.C. 487, 498, 411 S.E.2d 916, 924 (1992); United Labs., Inc. v. Kuykendall, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988).

Under North Carolina's "economic loss rule," a plaintiff generally cannot recover in tort for purely economic loss where a contract, a warranty, or the UCC operates to allocate risk. See N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co., 294 N.C. 73, 81–82, 240 S.E.2d 345, 350–51 (1978), rejected in part on other grounds by Trs. of Rowan Tech. Coll. v. J. Hyatt Hammond Assocs., Inc., 313 N.C. 230, 328 S.E.2d 274 (1985); Legacy Data Access, Inc. v. Cadrillion, LLC, 889 F.3d 158, 164 (4th Cir. 2018); Kelly v. Ga.-Pac. LLC, 671 F. Supp. 2d 785, 791–92 (E.D.N.C. 2009); Beaufort Builders, Inc. v. White Plains Church Ministries, Inc., 246 N.C. App. 27, 33, 783 S.E.2d 35, 39 (2016); Lord v. Customized Consulting Specialty, Inc., 182 N.C. App. 635, 639, 643 S.E.2d 28, 30–31 (2007); Moore v. Coachmen Indus., Inc., 129 N.C. App. 389, 401–02, 499 S.E.2d 772, 780 (1998). No tort action lies "against a party to a contract who . . . fails to properly perform the terms of the contract, even if that failure to perform was due to the negligent or intentional conduct of that party, when the injury resulting from the breach is damage to the subject matter of the contract." Lord, 182 N.C. App. at 639, 643 S.E.2d at 30–31 (quotation omitted); see Legacy Data Access, Inc., 889 F.3d at 164; Beaufort Builders, Inc., 246 N.C. App. at 33, 783 S.E.2d at 39; Rountree v. Chowan Cty., 796 S.E.2d 827, 830 (N.C. Ct. App. 2017); Kelly, 671 F. Supp. 2d at 791–92. The policy underlying the economic loss rule is that "the sale of goods is accomplished by contract and the parties are free to include, or exclude, provisions as to the parties' respective rights and remedies." Moore, 129 N.C. App. at 401, 499 S.E.2d at 780; see Kelly, 671 F. Supp. 2d at 791–92; Lord, 182 N.C. App. at 639, 643 S.E.2d at 30. The rule reflects the fundamental differences between the goal

of awarding damages in tort law (i.e., to compensate the victim and punish the wrongdoer for the tort) and the goal of awarding damages in contract law (i.e., to compensate the injured party for the breach). See Strum v. Exxon Co., USA, 15 F.3d 327, 330 (4th Cir. 1994). Thus, the rule confines parties to a contract's terms should a party seek redress concerning the contract. See Crop Prod. Servs., Inc. v. Ormond, No. 4:11-CV-41-D, 2012 WL 147950, at *7 (E.D.N.C. Jan. 18, 2012) (unpublished).

North Carolina courts recognize limited exceptions to the economic loss rule. See, e.g., Ellis v. La.-Pac. Corp., 699 F.3d 778, 783–84 (4th Cir. 2012). If a defendant owed a duty independent of and distinguishable from a duty owed by contract, then a plaintiff can recover in both tort and contract for the same course of conduct. See Strum, 15 F.3d at 330–31; Kelly, 671 F. Supp. 2d at 791. In other words, "where there is an identifiable tort even though the tort also constitutes, or accompanies, a breach of contract, the tort itself may give rise to a claim." Newton v. Standard Fire Ins. Co., 291 N.C. 105, 111, 229 S.E.2d 297, 301 (1976). Aggravating elements (e.g., fraud, malice, reckless indifference, or oppression) also must accompany the allegedly tortious conduct. See Newton, 291 N.C. at 112, 229 S.E.2d at 301; Strum, 15 F.3d at 331. To determine whether an exception to the economic loss rule applies, courts focus on whether the plaintiff has plausibly alleged a duty that exists independently of a duty arising from a contract. See Legacy Data Access, Inc., 889 F.3d at 165–66; Rountree, 796 S.E.2d at 830–32; Croker v. Yadkin, Inc., 130 N.C. App. 64, 69, 502 S.E.2d 404, 407 (1998).

As for CDI's tortious interference with contract claim, CDI argues that "the contractual duties and tort duties are not coextensive, but independent and distinct." [D.E. 43] 9. Specifically, CDI contends that the contract did not prohibit HCL from delayering its subcontractors and did not extend

7

beyond December 1, 2017. See [D.E. 43] 9–13.[2] CDI also contends that, in any event, HCL owed a general duty to not interfere with CDI's contracts under North Carolina law. See id. at 13–16. In opposition, HCL argues that the contract controlled when and in what circumstances HCL could engage in delayering; therefore, the economic loss rule precludes CDI's tortious interference with contract claim. See [D.E. 44] 4–5.

The purpose of the economic loss rule—to encourage parties to allocate risk of economic loss amongst themselves—applies here because the parties negotiated the circumstances in which HCL could engage in delayering. See Legacy Data Access, Inc., 889 F.3d at 164; cf. Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 345–46 (4th Cir. 1998). This case fundamentally concerns whether HCL or CDI breached the contract, including whether HCL did so by engaging in delayering. Cf. Am. Compl. [D.E. 14] ¶¶ 23, 28, 30, 45–46. Moreover, North Carolina common law does not impose a general duty on business competitors like CDI and HCL to not interfere with competitors' contracts. See Beverage Sys. of the Carolinas, LLC v. Associated Beverage Repair, LLC, 368 N.C. 693, 700, 784 S.E.2d 457, 462 (2016); Peoples Sec. Life Ins. Co. v. Hooks, 322 N.C. 216, 220–21, 367 S.E.2d 647, 650 (1988); Clinical Staffing, Inc. v. Worldwide Travel Staffing Ltd., 60 F. Supp. 3d 618, 627 (E.D.N.C. 2013). As a federal court sitting in diversity, this court declines to expand North Carolina's common law on this issue. See Time Warner Entm't, 506 F.3d at 314–15; Wade, 182 F.3d at 286; Jacobson, 48 F.3d at 783. Without a duty to avoid delayering independent of the contract, the economic loss rule precludes CDI's claim

---

[2] In CDI's amended complaint, CDI alleges that the contract's anti-delayering terms extended to its subcontractors and independent contractors. See Am. Compl. [D.E. 14] ¶¶ 23, 30. The court draws "all reasonable factual inferences" in CDI's favor, and the court must "accept all well-pleaded allegations of [CDI's] complaint as true." Massey, 759 F.3d at 353; see Drager v. PLIVA USA, Inc., 741 F.3d 470, 474 (4th Cir. 2014); Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999). Thus, the court accepts as true that the contract's terms extended to CDI's subcontractors.

for tortious interference with contract. See, e.g., Foodbuy, LLC v. Gregory Packaging, Inc., No. 3:16-CV-809-FDW-DCK, 2018 WL 4603159, at *27–29 (W.D.N.C. Sept. 25, 2018) (unpublished); ACS Partners, LLC v. Americon Grp., Inc., No. 3:09cv464-RJC-DSC, 2010 WL 883663, at *7–9 (W.D.N.C. Mar. 5, 2010) (unpublished). Accordingly, the court grants HCL's motion for judgment on the pleadings concerning CDI's tortious interference with contract claim.

B.

CDI also alleges that HCL violated the UDTPA. See Am. Compl. [D.E. 14] ¶¶ 60–67. To state a claim under the UDTPA, a plaintiff must plausibly allege that "(1) [the] defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001); Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000); Spartan Leasing Inc. v. Pollard, 101 N.C. App. 450, 460–61, 400 S.E.2d 476, 482 (1991). As for the first element, whether an act or practice is unfair or deceptive is a question of law for the court. See Gray, 352 N.C. at 68, 529 S.E.2d at 681; Gandecha v. Metro. Prop. & Cas. Ins. Co., No. 5:13-CV-688-F, 2014 WL 4243797, at *4 (E.D.N.C. Aug. 26, 2014) (unpublished). A practice is deceptive "if it has the tendency to deceive." Gray, 352 N.C. at 68, 529 S.E.2d at 681; see Marshall v. Miller, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). A practice is unfair "when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers." Marshall, 302 N.C. at 548, 276 S.E.2d at 403.

A "mere breach of contract, even if intentional, is not an unfair or deceptive act" by itself. Bob Timberlake Collection, Inc. v. Edwards, 176 N.C. App. 33, 42, 626 S.E.2d 315, 323 (2006); see PCS Phospate Co. v. Norfolk S. Corp., 559 F.3d 212, 224 (4th Cir. 2009); Walker v. Fleetwood

9

Homes of N.C., Inc., 362 N.C. 63, 72, 653 S.E.2d 393, 399 (2007); Gray, 352 N.C. at 75, 529 S.E.2d at 685; Branch Banking & Tr. Co. v. Thompson, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700 (1992). North Carolina law "does not permit a party to transmute a breach of contract claim into a ... UDTPA claim ... because awarding punitive or treble damages would destroy the parties' bargain." PCS Phosphate, 559 F.3d at 224; see Broussard, 155 F.3d at 346–47 (collecting cases); cf. Strum, 15 F.3d at 330. If substantial aggravating circumstances accompany a breach of contract, then those circumstances can give rise to an UDTPA claim. See Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 535 (4th Cir. 1989); United Roasters, Inc. v. Colgate-Palmolive Co., 649 F.2d 985, 992 (4th Cir. 1981); Burrell v. Sparkkles Reconstruction Co., 189 N.C. App. 104, 111, 657 S.E.2d 712, 717 (2008); Branch Banking & Tr. Co., 107 N.C. App. at 62, 418 S.E.2d at 700.

As for CDI's UDTPA claim, CDI does not claim that substantial aggravating circumstances accompanied HCL's alleged breach of contract. See Am. Compl. [D.E. 14] ¶ 61. Rather, CDI alleges that HCL's extra-contractual conduct, such as HCL's alleged tortious interference with CDI's subcontracts, violates the UDTPA. See id. ¶¶ 62–66. HCL responds that CDI's allegation is essentially a breach of contract claim, not an UDTPA claim. See [D.E. 41] 14–17.

CDI identifies four acts as the basis for its UDTPA claim: (1) HCL's false assurances that it would cease interfering in CDI's subcontracts, (2) HCL's demand that CDI make extra-contractual payments to "to receive the benefit of its bargain," (3) HCL's allegedly pretextual use of the contract's audit procedures and rate-card setting to compel renegotiation of the contract and to maximize HCL's benefit from breaching the contract, and (4) HCL's use of a secret rate-card unauthorized by the contract to evaluate vendors. See Am. Compl. [D.E. 14] ¶¶ 30–31, 36, 38; [D.E. 27] ¶¶ 18, 51; [D.E. 43] 20.

All four of these acts concern the rights and duties of the parties under the contract. Because

substantial aggravating circumstances did not accompany HCL's alleged breach of contract, these actions do not violate the UDTPA. See, e.g., Bob Timberlake Collection, Inc., 176 N.C. App. at 41–42, 626 S.E.2d at 323. Alternatively, conduct giving rise to a tortious interference with contract claim can give rise to an UDTPA claim. See, e.g., Edmondson v. Am. Motorcycle Ass'n, Inc., 7 F. App'x 136, 152–53 (4th Cir. 2001) (per curiam) (unpublished); McDonald v. Scarboro, 91 N.C. App. 13, 21, 370 S.E.2d 680, 685 (1988). Nonetheless, because CDI's tortious interference with contract claim fails under the economic loss rule, CDI's UDTPA claim based on the same conduct also fails.

III.

In sum, the court GRANTS defendant's motion for partial judgment on the pleadings [D.E. 40] and DISMISSES plaintiff's claims for tortious interference with contract and unfair and deceptive trade practices.

SO ORDERED. This 7 day of March 2019.

JAMES C. DEVER III
United States District Judge

11